*Case Being Considered for Treatment Pursuant to Rule 34(j) of the Court's Rules*

## No. 2023-1050

In The

# United States Court of Appeals
# For The District of Columbia Circuit

## CORY H. SMITH

*Plaintiff - Appellant,*

v.

## COMMISSIONER OF INTERNAL REVENUE

*Defendant - Appellee.*

ON APPEAL FROM THE
UNITED STATES TAX COURT
Case No. 5101-20
Hon. Emin Toro, Tax Court Judge, Presiding

---

**OPENING BRIEF**

**FOR THE APPELLANT**

---

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

JUN 2 2 2023

RECEIVED

**CORY H. SMITH**

PSC 276 BOX 411
APO, AP 965
E-mail: cory.smith2@gmail.com
Tel.: + 61 4 6050 3167

Petitioner-Appellant *pro se*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES
## PURSUANT TO CIRCUIT RULE 28(a)(1)

**A.    Parties and Amici.** CORY H. SMITH is the petitioner in the United States Tax Court and Appellant in this Court. CORY H. SMITH, as an individual, certifies that there are no parent companies and no publicly held companies to disclose pursuant to Circuit Rule 26.1. The Commissioner of Internal Revenue is the defendant in the United States Tax Court and Appellee in this Court.

**B.    Rulings Under Review**. CORY H. SMITH appeals the August 25, 2022, Order of the United States Tax Court (Judge Toro, Emin), the January 12, 2023, Order of the United States Tax Court (Judge Toro, Emin) and the February 14, 2023, Order of the United States Tax Court (Judge Toro, Emin).

**C.    Related Cases.** The appealed rulings have not previously been before this Court or any other court. The following cases involve common questions of law to the appealed ruling and are pending in the United States Tax Court and the United States Court of Federal Claims:

United States Court of Federal Claims

No. 20-1037T        Ramon D. Baney and Marion D. Baney *v.* USA

United States Tax Court

No. 18581-22        Cameron Z. Gregory & Kathleen E. Gregory v. Commissioner

i

No. 13605-22    Robby L. Larmon & Brandi N. Larmon v. Commissioner

No. 12547-22    Kevin Doherty v. Commissioner

No. 12546-22    Cameron Z. Gregory & Kathleen E. Gregory v. Commissioner

No. 10240-21    Cameron Z. Gregory & Kathleen E. Gregory v. Commissioner

No. 5992-21    James T. Christian & Racheal S. Christian v. Commissioner

No. 4747-21    Brian J. Hall & Robin A. Hall v. Commissioner

No. 2506-21    Alexander J. Bebout & Angelica Bebout v. Commissioner

No. 1305-21    Nicole Diane Henaire v. Commissioner

No.1244-21    Hans L. Mayberry & Bradley C. Hayden v. Commissioner

No. 464-21    Mark D. Snoddy & Kristen M. Snoddy v. Commissioner

No. 11505-20    Michael Runnels v. Commissioner

No. 5386-20    George P. Brown & Ruth Hunt-Brown v. Commissioner

No. 5620-20    Bartholomew Deady & Patricia Deady v. Commissioner

No. 6209-20    Yoseph Jenaye v. Commissioner

No. 6500-20    Alejandro Nunez & Amy Nunez v. Commissioner

No. 6501-20    Andrew P. Mattson & Lindsey J. Mattson v. Commissioner

## STATEMENT OF ORAL ARGUMENT

This Court determined that this case should be considered for treatment pursuant to Rule 34(j) of the Court's ruling and to not schedule oral argument.

# TABLE OF CONTENTS

Certificate of Parties, Rulings, and Related Cases Pursuant to Circuit Rule 28(a)(1) ............................................................................................................... i

Statement of oral Argument....................................................................... iii

Table of Contents ....................................................................................... iv

Table of Authorities ....................................................................................v

Glossary................................................................................................... viii

Jurisdictional statement................................................................................1

Statement of the ISSUES .............................................................................1

STATEMENT OF THE CASE........................................................................2

  I.   FACTUAL BACKGROUND ....................................................................2

     A.   Pertinent Facts Surrounding Appellant's Closing Agreement.................2

     B.   Pertinent Facts Surrounding Appellant's Housing ..................................4

  II.   Procedural Background .................................................................................8

Standard of Review......................................................................................10

Summary of the Argument...........................................................................10

Argument......................................................................................................11

  I.   Appellant and the IRS Did Not Enter into a Valid, Enforceable Closing Agreement, As Such, the Closing Agreement Cannot Hinder Appellant from Claiming the Foreign Earned Income Exclusion....................................................11

     A.   Misstatements of Foreign Law are Treated as Misrepresentations of Fact. 12

     B.   The First Preamble is a Misstatement of Australian Tax Law. ...............16

     C.   Assent Obtained by Malfeasance of a Third-Party ..................................19

     D.   The Closing Agreement was Signed by an Agent Lacking Proper Authority under the Delegation Orders ..........................................................23

  II.   Smith is Eligible for the Housing Deduction under 26 U.S.C. § 119 because His Assigned Housing is Adjacent to the Business Premises of his Employer. ..27

Conclusion ...................................................................................................29

# TABLE OF AUTHORITIES

## Cases

Askew v. Smith, 246 S.W.2d 920 (Tex. Civ. App. 1952) ........................................15

Bennett v. Comm'r, 56 T.C.M. (CCH) 796 (T.C. 1988)...........................................18

Blue Cross & Blue Shield United of WI & Subsidiaries v. United States, 71 Fed. Cl. 641 (2006) ...........................................11

Bob Jones Univ. v. U.S., 229 Ct. Cl. 340 (1982) ...........................................28

Bowman v. City of Indianapolis, 133 F.3d 513 (7th Cir. 1998)...........................14

Byers v. Comm'r, 740 F.3d 668 (D.C. Cir. 2014)...........................................10

Confidential Informant 92-95-932X v. United States, 45 Fed. Cl. 556  (2000)......20

Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437 (1987) ..........................26

Daly v. Brennan, 87 Wis. 36, 57 N.W. 963 (1894) ...........................................15

Davis v. United States, 811 F.3d 335 (9th Cir. 2016) ........................................ 12, 14

Farrell v. Third Nat. Bank, 20 Tenn. App. 540, 101 S.W.2d 158 (1936)................15

*In re Miller*, 174 B.R. 791 (B.A.P. 9th Cir. 1994), *aff'd*, 81 F.3d 169 (9th Cir. 1996) ...........................................11

Ingram v. Comm'r, 32 B.T.A. 1063 (1935), aff'd sub nom., Comm'r of Internal Revenue v. Ingram, 87 F.2d 915 (3d Cir. 1937)...........................................22

IRM 8.13.1.2.1 ...........................................25

Lindeman v. Commissioner, 60 T.C. 609 (1973) ...........................................28

Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992) ..................................26

Phoenix Ins. Co. v. Comm'r, 29 B.T.A. 291 (1933) ...........................................18

Ryskamp v. Comm'r, 797 F.3d 1142 (D.C. Cir. 2015) ...........................................10

Scott v. Bodor, Inc., 571 N.E.2d 313 (Ind. Ct. App. 1991 ....................................15

Sea Shepherd Conserv. Soc'y v. IRS, 208 F. Supp. 3d 56 (D.D.C. 2016)..............19

Stiskin v. Comm'r, 72 T.C.M. 39 (1996) ...........................................24

United States v. Nat'l Steel Corp., 75 F.3d 1146 (7th Cir.1996) (Posner, J.)..........11

Wolverine Petrol. Corp. v. Commissioner, 75 F.2d 593 (8th Cir. 1935) ...............18

## Statutes

26 U.S.C. § 119 ........................................... 1, 9, 27

26 U.S.C. § 119(a)(2)...........................................26

26 U.S.C. § 6012(a)(1)(A) ...........................................17

26 U.S.C. § 6012(c) ...........................................17

26 U.S.C. § 6103 ........................................... passim

26 U.S.C. § 6103(b)(2)...........................................20

v

26 U.S.C. § 6103(b)(2)(A), ................................................................ 19, 20
26 U.S.C. § 6103(b)(2)(D) ................................................................ 19, 20
26 U.S.C. § 6213(a) ...............................................................................1
26 U.S.C. § 7121 ............................................................................ 12, 19
26 U.S.C. § 7121(b) ........................................................................ 13, 18
26 U.S.C. § 7482(a)(1)............................................................................1
26 U.S.C. § 7482(b)(1)............................................................................1
26 U.S.C. § 911 ......................................................................... 2, 16, 17
26 U.S.C. § 911(a) ........................................................................... 16, 17

## Other Authorities

Delegation Order 4-12 .................................................................... 23, 25
IRM 32.3.4.7.4 (08-11-2004)...................................................................22
IRM 8.13.1.1 ..........................................................................................24
IRM 8.13.12.1 (5) ..................................................................................24
IRS Ltr. Adv. 2013-130-23 (03-29-2013) ...............................................17
Revenue Procedure 68-16 .......................................................................24

## Rules

Fed. R. Civ. P. 44.1 ...............................................................................14

## Regulations

Treas. Reg. § 1.119-1(b) .........................................................................26
Treas. Reg. § 601.202 .............................................................................22
Treas. Reg. § 601.202(a)(1) .....................................................................22

## Secondary Sources

18 C.J.S., Corporations, s 327, p. 856; 23 Am. Jur., p. 815; Pomeroy, Equity
    Jurisprudence, 5th Ed., Vol. 3, p. 331 .................................................15
Misrepresentations by Third Persons, 26 Williston on Contracts § 69:14 (4th ed.
    2022) ..................................................................................................15
Misstatements of Law, 26 Williston on Contracts § 69:10 (4th ed. 2022)..............14
Saltzman, IRS Practice and Procedure ¶ 4.06, at 4–57...........................................20

## GLOSSARY

| | |
|---|---|
| Internal Revenue Service | IRS |
| Joint Defense Facility at Pine Gap | JDFPG |
| United States Code | U.S.C. |

## JURISDICTIONAL STATEMENT

The Tax Court had jurisdiction under 26 U.S.C. § 6213(a). This Court has jurisdiction under 26 U.S.C. § 7482(a)(1). Venue is proper in this Court under 26 U.S.C. § 7482(b)(1) (flush language) because Appellant resides outside of the United States and, thus, not a resident of a location covered by any other U.S. Court of Appeals.

## STATEMENT OF THE ISSUES

Whether the United States Tax Court erred in determining that the Closing Agreement between Smith and the IRS is valid and enforceable when it contained a material misrepresentation of fact, was procured through malfeasance, assent was induced by a third-party that Smith was justified in relying, and an IRS employee lacking proper authority signed the Closing Agreement.

Whether the United States Tax Court erred in denying Smith the deduction of the value of his housing under 26 U.S.C. § 119 despite his housing being adjacent to his employer's place of business and, therefore, considered the business premises of the employer.

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

#### A. Pertinent Facts Surrounding Appellant's Closing Agreement

1.    Smith is a United States taxpayer currently living in Alice Springs, Northern Territory ("NT"), Australia.

2.    Smith has worked for Raytheon at Joint Defense Facility at Pine Gap ("JDFPG') in Australia since 2010. JA0289.

3.    Smith received and accepted an offer from his employer Raytheon in 2009. JA0130.

4.    The onboarding process was lengthy and lasted several years. To not further delay an already lengthy onboarding process, Smith did not seek further employment. To prepare for his life in Australia, he sold his then recently paid off car, air shipped his personal belongings to Australia, and resided with his parents to save money. JA0130-31.

5.    Upon his arrival in Alice Springs, NT, Australia, Smith was presented with a Closing Agreement for the first time by his employer on his first day at work. His employer communicated to him that he has no choice but to sign the Closing Agreement or else he would risk immediate unemployment and would be financially responsible for shipping his personal belongings back to the U.S. Smith was required to sign the Closing Agreement at his employer's administrative office. JA0131.

2

6.    The Closing Agreement purported to waive his right to claim the Foreign Earned Income Exclusion pursuant to 26 U.S.C. § 911. His employer unduly pressured him every three years to sign a new Closing Agreement. The employer continued to threaten Smith with risk of unemployment and being subject to both, U.S. and Australian, tax withholding. JA0131.

7.    Neither the Commissioner of the IRS nor any of his delegates were present for, or part of, the employer's communications with Smith regarding the Closing Agreement.

8.    No IRS official discussed or directly presented Smith with any of the Closing Agreements over the years.

9.    The Closing Agreement at issue in this case is the 2016- 2018 Closing Agreement that Smith signed on April 21, 2016.

10.    No IRS official was present when Smith signed the 2016 – 2018 Closing Agreement.

11.    At no point did Smith authorize his employer to act as his agent to communicate with the IRS on his behalf regarding his tax obligations.

12.    Smith never executed IRS Form 2848, Power of Attorney, or any other power of attorney form authorizing his employer as his representative to communicate with the IRS on his behalf regarding the Closing Agreement. Smith

also never authorized his employer to receive any documentation on his behalf from the IRS.

13.    Smith never executed Form 8821, Tax Authorization, Disclosure Authorization giving authorization to his employer to receive confidential information on his behalf. Smith also did not provide oral disclosure consent or authorize Raytheon as a third-party designee.

14.    IRS Official Deborah Palacheck signed the Closing Agreement on May 17, 2017. Ms. Palacheck signed the Closing Agreement with the title Director, Treaty Administration.

15.    Smith did not submit this purported Closing Agreement directly to the IRS, nor did the IRS submit an executed copy of the purported Closing Agreement directly to Smith.

## B. Pertinent Facts Surrounding Appellant's Housing

16.    Smith lived at 36/27 Shanahan Close, Alice Springs, NT 0870 from September 17, 2010, until September 5, 2018. JA0290.

17.    For each tax year, Smith received a 1099-MISC from the Secretary of the Air Force showing as nonemployee compensation the value of lodging provided to Smith. In 2016, the value was $15,889.00. In 2017, the value was $15,501.00. For 2018, the value was $10,015.00.

4

18. Along with the 1099-MISC, each year, Smith received a memorandum from the Air Force that explains that the housing is owned by the U.S. Government. It further explains that due to the nature of the relationship between Smith, his employer, and the U.S. Government the housing is reportable to the IRS. It also states that the value was determined in coordination with the IRS and is based on the size of the home and the time Smith occupies the home.

19. Smith received a handbook from his employer that lays out the employer's policies.

20. Smith is a shift worker as defined in the handbook. The handbook explains that the average numbers of work hours are 42 hours. It additionally states that employees may be called in after hours or on weekends.

21. The handbook further stresses the importance of Smith's conduct while assigned to JDFPG and explains that he will need to display competence and conduct that credit the United States.

22. The handbook also highlights that the "[s]ecurity and the protection of classified information is a vital responsibility of every employee."

23. The handbook also explains that moving expenses will be billed to Raytheon directly.

24. The handbook also states that: "an employee assigned overseas for [Raytheon Australian Operation] programs will be provided good quality furnished

5

housing by the JDFPG. The furnishings consist of normal furniture required throughout the house, plus all major appliances such as: lamps, stove, refrigerator, deep freeze, washer, dryer, microwave, vacuum cleaner and dishwasher. In brief, everything for normal, comfortable living is provided except such items as dishes, cooking utensils, linens, etc. Since adequate furnished accommodations are provided and general goods are available in Alice Springs, only a limited amount of household goods and personal effects need be shipped to the overseas location."

25.    The handbook also lays out in detail the following information under Section 5. Housing:

a.    "All employees transferred to Alice Springs on the O&M Program are provided good quality JDFPG housing."

b.    "The accommodations are furnished so that only a minimum of household goods and personal effects need be shipped from the U.S."

c.    All household utility services besides telephone service are provided to the employee at no charge.

d.    A JDFPG housing board assigns the housing during monthly meetings. The housing is assigned based on the family size.

e.    An employee who is eligible for JDFPG housing can relinquish that right and receive housing assistance instead. To be eligible for housing assistance a

current "employee residing in JDFPG housing is eligible for housing" must "first relinquishing their JDFPG accommodation".

      f.  An employee is required to notify the JDFPG Security Office of any U.S. or foreign visitors.

26.    In late 2009, his employer first informed Smith of his housing assignment.

27.    On September 22, 2009, the employer provided a document titled "Welcome to Alice Springs" to Smith.

28.    The document explains that JDFPG assigns housing based on family size for the entirety of the tour assignment.

29.    It also explains that the housing is assigned by the JDFPG's Facility Housing Board.

30.    As part of the assigned housing, the Facility Maintenance Division provides maintenance services for all house and appliances. In Town Services also provided weekly trash removal, bulk trash pick-up, and furnishes utilities except telephone services.

31.    The document also explains that because furnished housing is provided, employees are restricted in in the amount of weight allowance of household goods that one can ship to Australia.

7

32.    On August 10, 2010, prior to Smith move to Australia, Linda J. Ross, a representative of Raytheon, informed petitioner of his housing assignment at 36/27 Shanahan Close, Alice Springs, NT 0870.

33.    Even though Alice Springs is approximately 11 miles away from JDFPG, the assigned housing was as close to JDFPG as possible. There is no closer area zoned for housing.

34.    In 2018, Smith had to move out of the assigned housing as JDFPG ceased to provide housing. At that time, Smith did not have the option to remain in the assigned housing.

## II.    PROCEDURAL BACKGROUND

35.    On or before April 15, 2017, Smith filed his 2016 U.S. Tax Return.

36.    On or before April 15, 2018, Smith filed his 2017 U.S. Tax Return.

37.    On October 12, 2018, Smith amended his 2016 and 2017 U.S. Tax Return to claim the Foreign Earned Income Exclusion and to deduct the value of housing from his taxable income. The amendments were deficient as they did not contain Smith's original signature Smith corrected the deficient filing on November 5, 2018, by submitting amended U.S. Tax returns containing his original signature.

38.    On or before April 15, 2019, Smith filed is 2018 U.S. Tax Return claiming the Foreign Earned Income Exclusion and to exclude the value of housing from his taxable income.

39.    On February 12, 2020 the IRS issued a Notice of Deficiency. The IRS denied Smith the Foreign Earned Income Exclusion and the exclusion under 26 U.S.C. § 119(a) for his housing.

40.    On March 17, 2020, Smith challenged the IRS's denial by filing a Petition in the U.S. Tax Court.

41.    On March 25, 2022, Smith and the IRS filed a competing motion for partial summary judgments requesting the Tax Court to determine the validity of Smith's Closing Agreement.

42.    On May 24, 2022, the Tax Court held oral arguments on the competing motions.

43.    On August 24, 2022, the Tax Court held that the Closing Agreement is valid and enforceable.

44.    On November 4, 2022, Smith and the IRS filed competing motions for summary judgment requesting the Tax Court to determine whether Smith can exclude the value of his housing from his taxable income pursuant to 26 U.S.C. § 119.

45.    On January 12, 2023, the Tax Court granted the IRS's motion for summary judgment holding that Smith did not meet the requirements under 26 U.S.C. § 119.

9

46.    The parties filed the agreed computation on February 10, 2023, and the Tax Court entered its decision on February 14, 2023.

47.    Smith filed a timely notice of appeal on February 16, 2023.

## STANDARD OF REVIEW

This Court "review[s] decisions of the Tax Court in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury [, therefore,] apply[ing] de novo review to the Tax Court's determinations of law." *Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014).

Likewise, "[w]hen reviewing the Tax Court's determinations on the merits of a taxpayer's challenge to tax liability, we review de novo the Tax Court's legal conclusions, including its grant of summary judgment." *Ryskamp v. Comm'r*, 797 F.3d 1142, 1147 (D.C. Cir. 2015) (citation omitted).

## SUMMARY OF THE ARGUMENT

The IRS permitted to enter into Closing Agreements pursuant 26 U.S.C. § 7121 with any person. See 26 U.S.C. § 7121. Such Closing Agreements are only valid if the taxpayer and the IRS entered into it without a party to the agreement inducing the other by stating misrepresentations of facts or committing malfeasance. But this is exactly what happened to Smith. When presented with the Closing Agreement, Smith was compelled to sign it based on the misrepresentation of Australian law on the face of the Closing Agreement. As explained in detail, a

10

misrepresentation of foreign law has been treated as a misrepresentation of fact in contract formation. As such, when the IRS misrepresented how Australian law allegedly applied, they committed a misrepresentation that justifies setting aside the Closing Agreement. Further, the Closing Agreement was only entered into because of the IRS sheer disregard for Smith's right to keep his confidential information private. Lastly, the IRS agent who signed the Closing Agreement was not authorized to do so under Delegation Order 8-3, as such it is not a valid Closing Agreement.

Further, the Tax Court erred when determining that Smith's housing was not on the business premises of his employer and thereby ignoring the uniqueness of JDFPG.

## ARGUMENT

### I.  APPELLANT AND THE IRS DID NOT ENTER INTO A VALID, ENFORCEABLE CLOSING AGREEMENT, AS SUCH, THE CLOSING AGREEMENT CANNOT HINDER APPELLANT FROM CLAIMING THE FOREIGN EARNED INCOME EXCLUSION.

A Closing Agreement is a written agreement between the taxpayer and the IRS to settle (to "close" so to speak) the liability of a taxpayer with respect to income tax for a certain period. *See In re Miller*, 174 B.R. 791, 796 (B.A.P. 9th Cir. 1994), *aff'd*, 81 F.3d 169 (9th Cir. 1996). Once the Closing Agreement has been signed and accepted by the IRS, it is final and conclusive. *Id.*

While Closing Agreements are statutory in nature, Courts have repeatedly pointed out that general contract principles apply to Closing Agreements. *Blue Cross & Blue Shield United of WI & Subsidiaries v. United States*, 71 Fed. Cl. 641, 648 (2006) (*citing United States v. Nat'l Steel Corp.*, 75 F.3d 1146, 1150 (7th Cir.1996) (Posner, J.).

Closing Agreements are authorized under 26 U.S.C. § 7121 and are final and conclusive except "upon a showing of fraud or malfeasance, or misrepresentation of a material fact." *See* 26 U.S.C. § 7121(b).

This case involves a taxpayer, Smith, who entered into a Closing Agreement without ever having the opportunity to speak to an IRS agent. The Closing Agreement contained material misrepresentation of foreign law, only came into existence because of the IRS's malfeasance in procuring the Closing Agreement and was never signed by an authorized agent.

## A. Misstatements of Foreign Law are Treated as Misrepresentations of Fact.

In accordance with 26 U.S.C. § 7121, a Closing Agreement, once entered into, can only be set aside upon the showing of fraud, malfeasance, or misrepresentation of a material fact. But general contract law still applies to Closing Agreements and cannot be ignored.

The Ninth Circuit has held that Closing Agreements are contracts and governed by rules applicable to contracts generally. *Davis v. United States,* 811 F.3d 335, 338-39 (9th Cir. 2016).

In the below proceedings, Smith attacked the validity of the Closing Agreement because the first preamble as written by the IRS contained material misrepresentation.

The first preamble of the Closing Agreement states the following:

> "WHEREAS, any wages, allowances, benefits and other emoluments paid or provided to said taxpayer as consideration for services performed for the employer in Australia, hereinafter referred to as income, are subject to taxation by the Government of the Commonwealth of Australia, and"

The second preamble of the Closing Agreement states:

> "WHEREAS, Article 9 and Article X of the agreements between the Government of the United States of America and the Government of the Commonwealth of Australia relating to the establishment of a Joint Defense Space Research Facility and a Joint Defense Space Communications Station, effective December 9, 1966, and November 10, 1969, respectively, provide that such income shall be deemed not to have been derived in Australia, provided it is not exempt, and is brought to tax, under the taxation laws of the United States."

The Tax Court held that no misrepresentation occurred because the preamble speaks of law and not of fact and that pursuant to the plain language of 26 U.S.C. § 7121(b), only misstatement of facts can set aside a Closing Agreement. *See* 26

13

U.S.C. § 7121(b). But the Tax Court erred by treating a statement of foreign law akin to a statement of law.

The preamble states that Smith's income would be subject to taxation by the Government of the Commonwealth of Australia. The preamble clearly expresses the application of foreign law. As explained below, this is also an incorrect statement of foreign law.

In its analysis, the Tax Court cited to the well-known treatise, *Williston on Contracts*, to proffer support for its conclusion that misrepresentations of fact and misstatements of law are separate and distinct legal principles. JA0039. *See Misstatements of Law*, 26 Williston on Contracts (Williston), § 69:10 (4th ed. 2022). The Tax Court then stated that, *inter alia*, the preamble speaks of Australian domestic law as it applies to U.S. employees at JDFPG. JA0039.

But a careful reading of the Tax Court's own citation renders this conclusion unavailing.

The Tax Court's own citation supports the finding that a statement of foreign law is treated as a statement of fact in the formation of contracts and, as the Ninth Circuit explained, contract law applies to Closing Agreements. *Davis v. United States,* 811 F.3d 335, 338-39 (9th Cir. 2016).

The citation explains that "a statement of the law of a foreign jurisdiction is a statement of fact and, therefore, if false, may be fraudulent." *Misstatements of Law*, 26 Williston § 69:10 (4th ed. 2022). JA0039.

The Tax Court erred in its ruling by ignoring that, while the judicial determination of foreign law is a determination of a question of law pursuant to Fed. R. Civ. P. 44.1, courts have held that a misstatement of foreign law in contract formation is a misrepresentation of fact. *See* Fed. R. Civ. P. 44.1; *see also Bowman v. City of Indianapolis*, 133 F.3d 513, 519 (7th Cir. 1998) (citing *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 319 (Ind. Ct. App. 1991)); *see also Daly v. Brennan*, 87 Wis. 36, 57 N.W. 963, 964 (1894) ("It is true that a mistake as to foreign law is considered a mistake of fact rather than a mistake of law."); *see also Farrell v. Third Nat. Bank*, 20 Tenn. App. 540, 101 S.W.2d 158, 164 (1936) ("A mistake as to a foreign law is a mistake of fact rather than a mistake of law."); *see also Askew v. Smith*, 246 S.W.2d 920, 922 (Tex. Civ. App. 1952) (citing 18 C.J.S., Corporations, s 327, p. 856; 23 Am. Jur., p. 815; Pomeroy, Equity Jurisprudence, 5th Ed., Vol. 3, p. 331) ("The familiar rule (with many exceptions) that all persons are presumed to know the law does not apply to a misrepresentation concerning foreign laws[.]")

Furthermore, Williston on Contracts further clarifies that if "a party's manifestation of assent is induced by… a material misrepresentation by one who is not a party to the transaction upon which the recipient is justified in relying, the

contract is voidable by the recipient." *Misrepresentations by Third Persons*, 26 Williston § 69:14 (4th ed. 2022).

As such, the Tax Court erred in its determination that the preamble speaks of a statement of law that cannot serve as grounds to set aside the Closing Agreement. In accordance with common law on contracts, a misrepresentation of foreign law is treated as a misrepresentation of fact, which can serve as grounds to invalidate a Closing Agreement. As such, this Honorable Circuit should reverse and remand to permit the lower court to determine whether the misrepresentation of foreign law was fraudulent.

## B. The First Preamble is a Misstatement of Australian Tax Law.

The Tax Court begins its analysis of the first preamble with admitting that the preamble is a legal conclusion of Australian domestic law to U.S. employees at Pine Gap. JA0039. But because it pre-maturely ends its analysis of the preamble, the Tax Court never analyzed whether the preamble includes a misstatement.

Nevertheless, when the Court addressed one of Smith's alternative arguments, the Tax Court stated that Australia detrimentally relies on the Closing Agreement, suggesting that the Tax Court does not believe this preamble includes a misstatement at all. JA0028.

To support his argument in Tax Court, Smith provided an expert opinion of an Australian tax lawyer. The Australian tax lawyer explains income earned at

16

JDPFG by a U.S. citizen is exempt from Australian domestic tax law regardless of whether such person claims the exclusion under 26 U.S.C. § 911 on a U.S. Tax Return. JA0141. The applicable Australian tax provision 23AA explains that if a non-Australian person works and lives in Australia for an approved project, such as JDFPG, such non-Australian person is not considered to be an Australian tax resident. The Australian tax provision then further states that the income earned at JDFPG cannot be exempt under U.S. Tax law. As the Australian tax expert explained the word "exempt" must be analyzed under Australian law. Under Australian law, the phrase "not exempt from tax" means not considered at all to determine a person's income for that year. The Australian court has held that if an item of income is in any way entered into the computation to determine a person's tax liability, such income is not considered exempt.

When a person claims the Foreign Earned Income Exclusion pursuant to 26 U.S.C. § 911(a), the income is considered to determine the tax rate.

26 U.S.C. § 911(a) provides for an exclusion with a progression system in which the income is added back to the bottom of the stack for computation of a taxpayer's tax liability. *See* IRS Ltr. Adv. 2013-130-23 (03-29-2013).

IRS Letter Advice No. 2013-13-023 explains the mechanics of the Foreign Earned Income Exclusion. The IRS Letter Advice explains that Foreign Earned Income Exclusion is subtracted from the total gross income to obtain the adjusted

gross income. Next, exemptions and itemized deductions are subtracted to arrive at the taxable income. Then, the Foreign Earned Income Exclusion is added back to the taxable income to determine the effective tax rate to be applied to the amount exceeding the Foreign Earned Income Exclusion. *Id.*

Under 26 U.S.C. § 6012(a)(1)(A), a person whose gross income is less than the exemption amount does not have to file an income tax return. 26 U.S.C. § 6012(c) clarifies that gross income for this section shall be computed without regard to the excluding provided under 26 U.S.C. § 911. This requirement illustrates that even if a U.S. citizen working at Pine Gap can reduce his adjusted gross income to $0 based on 26 U.S.C. § 911, that income would still be brought to tax because such a person still must file an income tax return.

Because the application of 26 U.S.C. § 911 would not be considered an exemption under Australian law, the preamble includes a misstatement. And the Tax Court in *Bennett v. Comm'r* held that usual rules of misrepresentation apply when determining whether a Closing Agreement should be set aside. "In order to establish a misrepresentation of a material fact sufficient to set aside a Closing Agreement pursuant to 26 U.S.C. § 7121(b), the evidence must show that the representation made by one party contained incorrect or incomplete information…regarding the express terms reflected in the proposed Closing Agreement and that such information was in good faith and detrimentally relied upon by the other party in

entering into the Closing Agreement." *Bennett v. Comm'r*, 56 T.C.M. (CCH) 796 (T.C. 1988) (citing *Phoenix Ins. Co. v. Comm'r*, 29 B.T.A. 291 (1933))

Despite the Tax Court erroneous ruling, Smith was able to show that statutory grounds exist to set aside the Closing Agreement. *See* 26 U.S.C. § 7121(b); *see also, e.g.*, *Wolverine Petrol. Corp. v. Commissioner*, 75 F.2d 593, 596 (8th Cir. 1935).

Because a statement of foreign law is view as a misstatement of fact, Smith requests that this Court reverse the Tax Court's holding that the preamble included a misstatement of law, not fact, and remands the case back for further proceedings in accordance with this Court's order.

### C. Assent Obtained by Malfeasance of a Third-Party

The Tax Court also erred in finding that malfeasance did not take place in the making of the Closing Agreement. JA0029. By reaching such conclusion, the Tax Court imposed requirements under 26 U.S.C. § 6103 that go beyond the plain language of the statute. JA0030.

As a way of background, Congress enacted 26 U.S.C. § 6103 to protect taxpayers' confidential information. The code provision prohibits a government employee to disclose so-called "return information." As the Tax Court correctly pointed out the definition of "return information" under 26 U.S.C. § 6013 is deliberately sweeping "to effectuate the statute's core purpose of protecting taxpayer

privacy." FEIE p. 30. *Sea Shepherd Conserv. Soc'y v. IRS*, 208 F. Supp. 3d 56, 86 (D.D.C. 2016).

Under 28 U.S.C. § 6103(b)(2)(A), return information is defined to include the identity of a taxpayer, the nature, source, or amount of the taxpayer's income, any tax position including deductions, exemptions, credits taken on the return. This subsection essentially protects all information that the IRS would rely upon when determining a person's tax liability. *See* 26 U.S.C. § 6103(b)(2)(A).

But because the code provision is deliberately sweeping, the statute goes far beyond such initial definition. As such, it protects any information regarding an agreement that the IRS and a taxpayer enter into under 26 U.S.C. § 7121, or any background information relating to such an agreement or *request for such an agreement*. *See* 26 U.S.C. § 6103(b)(2)(D) (emphasis added).

As the Court of Federal Claims explained "[i]n defining the areas of permissible disclosure, "Congress attempted 'to balance the particular office or agency's need for the information involved with the citizen's right to privacy, as well as the impact of the disclosure upon the continuation of compliance with our country's voluntary tax assessment system." *Confidential Informant 92-95-932X v. United States*, 45 Fed. Cl. 556, 558 (2000) (citing Saltzman, *IRS Practice and Procedure* ¶ 4.06, at 4–57)

The Court found that because the IRS provided a *pro forma* Closing Agreement to Smith's employer, the IRS did not violate this code provision because it was not associated with any taxpayer. JA0030.

By reaching this conclusion, the Tax Court misconstrues the flush language of 26 U.S.C. § 6103(b)(2)(D).

In a footnote, the Tax Court asserts that it is not readily apparent whether 26 U.S.C. § 6103(b)(2)(D) would protect the request of a Closing Agreement if the request does not contain return information as defined under 26 U.S.C. §6103(b)(2)(A). JA0032.

But a plain reading of 26 U.S.C. § 6103 does not support the Tax Court's finding. The definitions contained under subsection (b)(2) are not contingent on each other. They are separate definitions. The flush language of subsection (b)(2)(D) makes it clear that a violation occurs when an unauthorized party can associate or identify a taxpayer by the disclosure. Here, the employer was able to associate and identify all its employees, including Smith, when the IRS provided the blank Closing Agreement to the unauthorized third party, as such the Closing Agreement was only entered into through the malfeasance of the IRS.

Further, the Tax Court erred when it dismissed the post-execution violation of 26 U.S.C. § 6103. After the IRS agent signed the Closing Agreement, the IRS sent the Closing Agreement to the employer and not to Smith. Smith never authorized his

employer to act as his agent before the IRS or enable the employer to accept confidential tax information. JA0132-33.

The Tax Court held that the execution of the Closing Agreement by an IRS agent preempts the argument that malfeasance occurred because a post-execution violation cannot induce a taxpayer to sign a Closing Agreement. JA0036.

The Tax Court did not rule whether the disclosure would violate 26 U.S.C. § 6103 but simply held because the disclosure took place after the execution, it did not matter. JA0036.

The Tax Court stated that malfeasance must *induce* the taxpayer to sign the Closing Agreement. JA0036. But the Tax Court's own citation does not support such legal conclusion. The United States Board of Tax Appeals in *Ingram v. C.I.R.*, states that the malfeasance needs to occur "in the making of" the Closing Agreement. *See Ingram v. Comm'r*, 32 B.T.A. 1063, 1065 (1935), *aff'd sub nom.*, *Comm'r of Internal Revenue v. Ingram*, 87 F.2d 915 (3d Cir. 1937).

The IRS own guidance states that the process of entering into a Closing Agreement involves providing the taxpayer with a copy of the fully executed Closing Agreement. IRM 32.3.4.7.4 (08-11-2004) explains that a transmittal letter to the taxpayer should be prepared after the Closing Agreement has been executed. Here, the transmittal letter was provided to an unauthorized third party, the employer. As

such, the Tax Court erred in dismissing Smith claim because a post-execution

violation of 26 U.S.C. § 6103 still relates to the making of the Closing Agreement.

Smith requests that this Court reverse the Tax Court's holding and remands the

case back for further proceedings in accordance with this Court's order.

## D. The Closing Agreement was Signed by an Agent Lacking Proper Authority under the Delegation Orders

The Tax Court erred in its holding that the Director, Treaty Administration acted

within her delegated authority when she signed the 2016 – 2018 Closing Agreement.

JA0022.

Through Treasury Order 150-10, the Secretary of the Treasury delegated all

authority in the Internal Revenue Code to the Commissioner, who can delegate

specific authorities through Delegation Orders. *See* Treas. Order: 150-10 (Oct. 22,

1982).

Treas. Reg. § 601.202 states that "the Commissioner or any officer or employee

of the Internal Revenue Services authorized in writing by the Commissioner may

enter into" a Closing Agreement. *See* Treas. Reg. § 601.202(a)(1)).

In *Stiskin v. Comm'r*, this Court has held that the taxpayer and the IRS did not

enter into a valid Closing Agreement because it was signed by an agent lacking

proper authority. The Closing Agreement concerned a case already docketed before

the United States Tax Court. The agent signing on behalf of the U.S. Government

23

was the Associate Chiefs of Appeals Offices. The Delegation Order No. 97[1] stated that "Chiefs and Associate Chiefs of Appeals Offices…are hereby authorized in cases under their jurisdiction (*but excluding cases docketed before the United States Tax Court*) to enter into and approve a written agreement with any person relating to the Internal Revenue tax liability of such person." *Stiskin v. Comm'r*, 72 T.C.M. 39 (1996). The Tax Court found that Delegation Order 97, which was amended and supplemented by Delegation Order. 225 (Rev. 1), "preclude specified officers of the IRS, including Associate Chiefs of Appeals, from entering into Closing Agreements regarding tax shelter cases docketed in the Tax Court[.]" The Tax Court held that since an officer lacking proper authority signed the Closing Agreement on behalf of the Commissioner, the Closing Agreement is void. *Id.*

The Tax Court erred in determining that Delegation Order 4-12 conveyed proper authority when Delegation Order 8-3 has been held to be the proper authority for IRS agents to sign Closing Agreements. JA0026.

Revenue Procedure 68-16 states that Delegation Order 8-3 governs the authority of executing Closing Agreements as competent authority. *See* Rev. Proc. 68-16, 1968-1 C.B. 770 (as modified by Rev Proc. 94-67, 1994-2 C.B. 800) ("Under Delegation Order No. 97 (Rev. 4) the following categories of Closing Agreements

---

[1] Delegation Order 97 is superseded by Delegation Order 8-3, which is addressed in detail below.

will be signed in the National Office… those entered into and approved by the Director of International Operations: (a) as competent authority in the administration of the operating provisions of the tax conventions of the United States, (b) providing for the mitigation of economic double taxation under section 3 of Revenue Procedure 64—54, C.B. 1964—2, 1008, and (c) providing for both such mitigation and relief under Revenue Procedure 65—17, C.B. 1965—1, 833.")

IRM 8.13.1.1 echoes the Revenue Procedure 68-16 by stating that Delegation Order 8-3 controls the conveyance of proper authority to IRS agents' ability to sign Closing Agreements acting as competent authority. IRM 8.13.12.1(5) determines that "[c]losing agreements with taxable periods ended prior to the date of the agreement determine either total tax liability of the taxpayer for one or more types of tax for such periods or one or more separate items affecting such liability or both. Agreements also may be entered into with respect to specific matters related to such periods and affecting future periods. Agreements having the foregoing characteristics are the types that will be entered into according to Delegation Order 8-3." IRM 8.13.1.2.1 (05-25-2018) (Emphasis Added).

Delegation Order 8-3 does not convey authority to the Director, Treaty Administration to execute Closing Agreements, the Delegation Order does not even mention an agent with such title. *See* Delegation Order 8-3.

The Tax Court also erred when finding that Delegation Order 4-12 (Rev. 3) provided proper authority to the Director, Treaty Administration to execute the Closing Agreement. JA0024. The Commissioner provides general authority to certain IRS agents to act as the competent authority in various instances through Delegation Order 4-12 (Rev. 3). Through Delegation Order 8-3(8), the Commissioner provides specific authority to particular IRS agents, in their roles as the competent authority, to enter into and approve Closing Agreements. The United States Supreme Court has long held that in statutory constructions, the specific governs the general. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 385 (1992) (citing *Crawford Fitting Co. v. J. T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987)).

Delegation Order 4-12 (Rev. 3) only generally describes the delegated authority to IRS agents to act as the competent authority, and Delegation Order 8-3specifically limits the delegation of authority of competent authority agents in relation to Closing Agreements. Therefore, Delegation Order 8-3 is the proper source of authority. Thus, the Director, Treaty Administration lacked the authority to sign the Closing Agreement.

Smith request that this Court finds that Delegation Order 8-3 is the proper source of authority, reverses the Tax Court's holding, and remands the case back for further proceedings in accordance with this Court's order.

## II.    SMITH IS ELIGIBLE FOR THE HOUSING DEDUCTION UNDER 26 U.S.C. § 119 BECAUSE HIS ASSIGNED HOUSING IS ADJACENT TO THE BUSINESS PREMISES OF HIS EMPLOYER.

26 U.S.C. § 119(a)(2) states that "there shall be excluded from gross income of an employee the value of…lodging furnished…by or on behalf of his employer for the convenience, but only if…the employee is required to accept such lodging on the business premises of his employer as a condition of his employment." *See* 26 U.S.C. § 119(a)(2). Treas. Reg. § 1.119-1(b) sets forth a three-part test. A taxpayer who meets all three parts, can exclude the value of lodging. The tests are: (1) The lodging is furnished on the business premises of the employer. (2) The employee is required to accept such lodging as a condition of his employment. (3) The lodging is furnished for the convenience of the employer. If a taxpayer meets the test, the value of lodging can be excluded regardless of whether the employee is charged for the housing and despite any characterization of the value of lodging as compensation. *See* Treas. Reg. § 1.119-1(b).

The Tax Court determined that the assigned housing was not on the employer's business premises and on that basis alone denied Smith the deduction afforded under 26 U.S.C. § 119. JA0050. But the Tax Court's ruling is erroneous due to the facts and circumstances of Smith's housing.

Before Smith arrived in Alice Springs, Australia to start his employment, his employer informed him via email of his housing assignment. JA0290. Smith was

27

under the impression that he had to accept the housing assignment from his employer. JA0290. In fact, the material provided to Smith reiterated that the housing was assigned to him. JA0291. Throughout his time living in this assigned housing, Smith completed mandatory and voluntary work from home. JA0291.

The term "business premises" has been subject to various interpretations to the point that courts have called the constructions of this phrase "at best elusive" and "incapable of generating any hard and fast line. *Bob Jones Univ. v. U.S.*, 229 Ct. Cl. 340, 355 (1982).

The Tax Court correctly pointed out that "[t]he extent or boundaries of the business premises in each case is a factual question whose resolution follows a consideration of the employee's duties as well as the nature of the employer's business. *Lindeman v. Commissioner*, 60 T.C. 609 (1973)." JA0051. But then diverged from this statement when it stated that the housing did not give Smith immediate access to his employer's business premises, JDFPG. JA0054.

But what sets his housing aside from regular housing is the control that his employer and JDFPG maintained over the house. Smith had to report any visitors to his place of employment, JDFPG. JA0292. As an unmarried individual, his employer and JDFPG also communicated to Smith that he is not allowed to cohabitate with a romantic partner. JA0292.

While the housing was located 11 miles from JDFPG, Smith's housing was still adjacent to JDFPG. JA0292. Smith would have been unable to live in any closer to JDFPG due to the security buffer zone of JDFPG. JA0292. The boundaries of JDFPG do not end when one leaves the facility. Between JDFPG and Alice Springs, one will find not much more than dirt and a prison. In fact, JDFPG's control penetrates the walls of the assigned housing. Smith was subject to rules of his employer that go far beyond regular "landlord duties."

Because JDFPG and, thereby, Smith's employer exercised control over Smith's housing and the housing was adjacent to the border of JDFPG's buffer zone, the housing was in fact on the business premises.

Smith requests that this Court finds that his housing was on the business premises of his employer, reverse the Tax Court's holding, and remand the case back for further proceedings.

## CONCLUSION

The judgment below should be vacated, and the case remanded.

Dated June 20, 2023

Respectfully submitted,

/s/ Cory Smith

By: _____

CORY H. SMITH

29

## CERTIFICATE OF COMPLIANCE

1.      I certify that this Petition complies with the type-volume limitations of the Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by the Fed. R. App. P. 32(f), the Brief contains 7,580 words.

2.      I also certify that this Petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Cory Smith
_____
CORY H. SMITH

30

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, a true and accurate copy of the foregoing Opening Brief & Rule 28(f) Addendum with accompanying Joint Appendix was served via US First-Class Mail.

/s/ Cory Smith

CORY H. SMITH

PSC 276 BOX 411
APO, AP 965
Email: cory.smith2@gmail.com
Tel.: + 61 4 6050 3167

Petitioner-Appellant *Pro Se*

31